UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LYNN BARTLETT,<br><br>　　　　Petitioner,<br><br>　v.<br><br>MATTHEW CATE,<br><br>　　　　Respondent. | 1:09-CV-1486 OWW JMD HC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

　　　　James Lynn Bartlett (hereinafter "Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

## PROCEDURAL HISTORY

　　　　Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a February 2, 2007 judgment of the Stanislaus County Superior Court. A jury found Petitioner guilty of several offenses arising out of the shooting of Kevin Bruce Qualls. The trial court imposed a sentence of thirty-three years and eight months.

　　　　Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. The California Court of Appeal issued a reasoned opinion on May 28, 2008, affirming the conviction. Petitioner filed a petition for review with the California Supreme Court, which the Supreme Court denied.

　　　　On August 24, 2008, Petitioner filed the instant federal petition for writ of habeas corpus. See Doc. No. 1. On February 17, 2010, Respondent filed an answer to the petition. See Doc. No. 17.

# FACTUAL BACKGROUND[1]

The day after [Petitioner] was released from prison on parole, he and Norsworthy, along with Norman and Darlene Climer, drove to the home of Doreen Carr and Tommy Patterson. [Petitioner] and Norsworthy walked up to the home of Carr and Patterson; the Climers waited in the car. Patterson knew [Petitioner] and Norsworthy, so he let them into his home. Once inside, Norsworthy brandished a gun and pushed Patterson against the refrigerator and held him in place with his arm across Patterson's throat. Norsworthy asked Patterson how to find Kevin Bruce Qualls. When Carr tried to leave the room, [Petitioner] shoved her against a wall and held her in place for about five minutes.

Patterson initially did not tell [Petitioner] and Norsworthy how to find Qualls, prompting Norsworthy to waive the gun about and point it at Carr. Patterson then agreed to tell [Petitioner] and Norsworthy where Qualls lived.

Norsworthy and [Petitioner] forced Patterson to drive them to Qualls's house. The Climers followed in their own car.

Qualls was working on a car outside his home when Norsworthy and [Petitioner] pulled up and walked toward him. Norsworthy stated, "We got a beef with you," and [Petitioner] then kicked Qualls, knocking him down. Norsworthy walked up and shot Qualls in the neck. Martin M. saw the shooting from across the street and saw Norsworthy shoot Qualls "point blank, right in the face."

Jennifer Williams and April Magniez resided in the home with Qualls. Williams recalled Qualls stating, "Don't do this here, not in front of my grandchildren." After Qualls was shot, [Petitioner] and Norsworthy ran back to the Climers' car and drove around the block, where [Petitioner] and Norsworthy hopped out. [Petitioner] ran back to Qualls's house, where he found Williams administering CPR to Qualls. [Petitioner] shoved her away and appeared to try to asphyxiate Qualls.

[Petitioner] was present when ambulance and police crews arrived. He was "mad-dogging" witnesses and trying to intimidate them by staring them down. Some witnesses turned and walked away without talking to police.

Detective Allen Brocchini was called to the scene. He saw [Petitioner] there; [Petitioner] was shirtless and bore numerous gang tattoos.

After the shooting, Patterson took off in the other car. He returned home, distraught and shaking. Patterson asked Carr to take his young daughter and flee the house because he was afraid for their safety. Carr eventually entered a witness protection program.

The shooting rendered Qualls a quadriplegic. He was on a respirator for 18 months following the shooting and needed constant nursing care. Nurses assisted Qualls with coughing because he was unable to cough on his own. Qualls could spend only four or five hours daily in a wheelchair and suffered from bedsores because he was bedridden for about 20 hours a day. Qualls needed nursing assistance while in court and testifying.

---

[1] These facts are derived from the California Court of Appeal's opinion issued on May 28, 2008. See Petition Exhibit A at 2-4. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004); Moses v. Payne, 555 F.3d 742, 746, n.1 (9th Cir. 2009).

> Qualls testified that 6 to 12 months before the shooting, Norsworthy beat him up. Norsworthy was upset that Qualls's brother had become a police informer. Qualls stated that Norsworthy ordered him, Qualls, to kill his own brother for being an informer. Qualls and [Petitioner] had been good friends and were related by marriage.
>
> Brocchini testified as a gang expert. He testified that the Peckerwoods were a White gang with over 40 members. The Aryan Brotherhood is a prison gang that uses the Peckerwood subset to intimidate witnesses and make money through criminal enterprises. [Petitioner] had numerous Peckerwood and White supremacist gang tattoos on his body. Brocchini also testified that Norsworthy had been convicted of two enumerated offenses in 1999.
>
> While awaiting trial, [Petitioner] and Norsworthy each were housed alone in a single-man cell. A search of each cell revealed gang correspondence, with references to the Peckerwoods, gang monikers, and other self-admitted gang members.
>
> Brocchini opined that [Petitioner] and Norsworthy were active participants in a criminal street gang, the Peckerwoods, at the time Qualls was shot. Brocchini was of the opinion that [Petitioner] was a member, having admitted membership, and Norsworthy was an associate.
>
> Norsworthy did not testify and presented no evidence in his defense. [Petitioner] testified the shooting was "a complete accident."

See Petition Exhibit A at 2-4.

### DISCUSSION

**I.    Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution and Petitioner's custody arose from a conviction in the Stanislaus County Superior Court. As the judicial district encompasses Stanislaus County, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. See 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and

**II.   Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499

(9th Cir. 1997). The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions. See Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006), overruled in part on other grounds by, Hayward, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Id. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its

1  independent judgment that the relevant state court decision applied clearly established federal law
2  erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.  A federal
3  habeas court making the "unreasonable application" inquiry should ask whether the State court's
4  application of clearly established federal law was "objectively unreasonable." Id. at 409.

5        Petitioner bears the burden of establishing that the state court's decision is contrary to or
6  involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle,
7  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,
8  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court
9  decision is objectively unreasonable.  Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While
10 *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents
11 need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v.
12 Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can
13 no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit
14 precedent on a federal Constitutional issue....This does not mean that Ninth Circuit case law is never
15 relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of
16 determining whether a particular state court decision is an 'unreasonable application' of Supreme
17 Court law, and also may help us determine what law is 'clearly established'").  Furthermore, the
18 AEDPA requires that the Court give considerable deference to state court decisions.  The state
19 court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).  A federal habeas court is
20 bound by a state's interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.
21 2002).

22       The initial step in applying AEDPA's standards is to "identify the state court decision that is
23 appropriate for our review." Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more
24 than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last
25 reasoned decision.  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)) for the presumption
26 that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same
27 ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained
28 state court decisions to the last reasoned decision to determine whether that decision was contrary to

1  or an unreasonable application of clearly established federal law.  <u>Bailey v. Rae</u>, 339 F.3d 1107,
2  1112-13 (9th Cir. 2003).  As the California Supreme Court's decision consisted of a summary denial,
3  the Court looks through that decision to the last reasoned decision, namely, that of the California
4  Court of Appeal.  <u>See</u> <u>Nunnemaker</u>, 501 U.S. at 804.

### III.    Review of Petitioner's Claim-Prosecutorial Misconduct

Petitioner claims that his due process rights were violated when the prosecutor asked a witness improper character evidence questions and when the trial judge refused to grant Petitioner's motion for mistrial based on the questioning.

#### A.    State Appellate Court Decision

The California Court of Appeal on direct appeal rejected a claim that the trial court abused its discretion in denying Petitioner's motion for mistrial as follows:

> While testifying, Magen Qualls[2] stated that Magniez did not feel threatened by [Petitioner] because [Petitioner] "has never hurt anybody." The prosecutor then asked Magen if she had seen [Petitioner] be physically violent to any family member, to which Magen responded, "No, I haven't." The prosecutor persisted, asking Magen if she had seen [Petitioner] strike a family member. Defense counsel objected to the question as improper and the objection was sustained. The prosecutor then asked Magen, "Isn't it true you saw [Petitioner] punch your mom once?"
>
> At this point, defense counsel objected on the basis that it was improper character evidence and asked the trial court to declare a mistrial. The prosecutor argued it was impeachment. The trial court sustained the objection and asked the jury to leave the courtroom. After the jury left, the trial court found the prosecutor in contempt of court and sanctioned him $100. The trial court noted that Magen had not answered the question, stated that it would admonish the jury not to assume the truth of the prosecutor's question, and denied the mistrial motion. When the jury returned to the courtroom, the trial court read CALJIC No. 0.50 to the jury:
>
> "Statements made by the attorneys during the trial are not evidence. If an objection is sustained to a question, do not guess what the answer might have been. Do not speculate as to the reason for the objection. Do not assume to be true any insinuation suggested by a question asked a witness. A question is not evidence, and it may be considered only as it helps you to understand the answer."
>
> We review the denial of a motion for mistrial under the abuse of discretion standard. <u>People v. Cunningham</u> (2001) 25 Cal.4th 926, 984.  A motion for mistrial is directed to the sound discretion of the trial court.  "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." <u>People v. Haskett</u> (1982) 30 Cal.3d

---

[2] We refer to Magen Qualls by her first name, not out of disrespect but to avoid any confusion to the reader.

> 841, 854, italics added.
>
> [Petitioner] contends the admonition did not cure any harm because it is unlikely the jury followed the admonition. We disagree. [Petitioner's] claim that this was a protracted exchange and therefore the jury did not follow the admonition is without support in the record or law.
>
> This was a lengthy trial. The transcript is over 2,000 pages. The exchange complained of by [Petitioner] amounted to at most three questions and occupied no more than two pages of transcript. This hardly constitutes a protracted exchange.
>
> [Petitioner] also contends the admonition was insufficient because he was charged with victimizing three women and the question insinuated he beat women. The jury, however, did not hear any evidence that [Petitioner] had struck a family member; Magen denied ever witnessing such an event.
>
> Finally, we presume the jury understood and followed the instructions, including the admonition, unless there is evidence demonstrating the contrary. People v. Mendoza (2007) 42 Cal.4th 686, 699. The trial court admonished the jury immediately upon its return to the courtroom, and there is no indication in the record that the jury disregarded the admonishment.
>
> In People v. Price (1991) 1 Cal.4th 324, 430, a detective testified at trial that the defendant said he had been " 'in prison for the past eleven years.' " The trial court denied defendant's motion for a mistrial, but admonished the jury "not to consider evidence that defendant had been in prison 'in determining his guilt in this particular trial or to determine that he's a bad person.' " ( Ibid.) The California Supreme Court upheld the denial of defendant's motion on the ground that the trial court's admonition to the jury had been sufficient to cure any harm.
>
> In this case, as in Price, the trial court's admonition was sufficient to cure any harm to defendant. It is only in the exceptional case that the improper subject matter is of such a character that it cannot be removed by the court's admonitions. People v. Seiterle, (1963) 59 Cal.2d 703, 710.
>
> We conclude the trial court did not err in denying [Petitioner's] motion for mistrial.

See Petition Exhibit A at 5-7.

B.    Applicable Law

A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 171 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); see Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765 (1987) (quoting United States v. Bagley, 473 U.S. 667 (1985)). Under this standard, a petitioner must show that there is a reasonable

probability that the error complained of affected the outcome of the trial, namely that absent the alleged impropriety, the verdict probably would have been different.

C. <u>Analysis</u>

The State Appellate Court's determination that the prosecutor's questioning was not incurably prejudicial was not contrary to, or an unreasonable application of, clearly established Federal law. The prosecutor's questioning of Magen Qualls ("Witness"), when viewed in the entire context, was not prejudicial and did not "so infect the trial with unfairness" as to deprive Petitioner of a fair trial.

First, the jury did not hear any testimony from the witness that Petitioner had struck any family member. The Witness testified that she had not seen Petitioner be physically violent to any family member and that she did not feel threatened by Petitioner because he had never hurt anybody. <u>See</u> Petition Exhibit A at 5. When the prosecutor asked the Witness if she had seen Petitioner strike a family member or punch her mother, defense counsel objected to the questions and the trial judge sustained the objections. The Witness did not answer these additional questions regarding whether Petitioner had struck a family member or punched her mother.

Second, after the trial judge sustained defense counsel's objections, the trial judge admonished the jury to not: (1) assume the truth of the prosecutor's questions; (2) guess what the answer might have been; (3) speculate as to the reason for the objection; or (4) assume to be true any insinuation suggested by the question. The trial judge also instructed the jury that statements and questions made by the attorneys during the trial are not evidence. <u>See</u> Petition Exhibit A at 5.

Third, there is nothing in the record that indicates that the jury disregarded the trial judge's admonishment. <u>See</u> Petition Exhibit A at 6. It is presumed that the jury followed such admonishment and any prejudice was ameliorated. <u>See</u> <u>Richardson v. Marsh</u>, 481 U.S. 200, 206 (1987) (noting that "almost invariable assumption of the law that jurors follow their instructions."); <u>see also</u> <u>United States v. Awad</u>, 551 F.3d 930, 940 (9th Cir. 2009).

Lastly, the prosecutor's questioning of the Witness, when viewed in the larger context of the trial, did not render the trial fundamentally unfair, as the questions were isolated to few points in the

trial. Petitioner complained about three questions at most.[3] See Ortiz v. Stewart, 149 F.3d 923, 934-35 (9th Cir. 1998) (finding no due process violation where "allegedly improper question is an isolated or one-time incident"); see also Hall v. Whitley, 935 F.2d 164, 165-66 (9th Cir. 1991) (upholding conviction where prosecutor's comments were isolated moments in a three-day trial.)

Accordingly, there was no prejudicial prosecutorial misconduct in this instance, and habeas corpus relief is not warranted.

### D. Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 326; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338. In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable; thus Petitioner's claim is not deserving of encouragement to proceed further. Consequently, the Court hereby recommends that Petitioner be DENIED a certificate of appealability.

### RECOMMENDATION

Accordingly, the Court RECOMMENDS that:

1. The petition for writ of habeas corpus be DENIED WITH PREJUDICE; and

---

[3] The Appellate Court noted that Petitioner's trial was lengthy and that the transcript was over 2000 pages and that the prosecutor's challenged questioning occupied no more than two pages of the transcript.

2. The Clerk of the Court be DIRECTED to enter Judgment for Respondent; and

3. A Certificate of Appealability be DENIED.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     December 3, 2010                /s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE